Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| ABIGAIL CRUZ RODRÍGUEZ<br><br>Parte Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Parte Recurrida | KLRA202300204 | Revisión de Decisión Administrativa procedente del Departamento de Corrección y Rehabilitación<br><br>Sobre: Reclasificación |
|---|---|---|

Panel integrado por su presidente, el Juez Figueroa Cabán, la Juez Grana Martínez y el Juez Rodríguez Flores

Rodríguez Flores, juez ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 19 de diciembre de 2023.

Comparece ante nos el señor Abigail Cruz Rodríguez (recurrente o señor Cruz Rodríguez), por derecho propio y en forma *pauperis*, y solicita que revoquemos la determinación emitida el 24 de febrero de 2023, por el Comité de Clasificación y Tratamiento del Departamento de Corrección y Rehabilitación (Comité de Clasificación). Mediante el referido dictamen, el Comité de Clasificación reclasificó al recurrente de custodia mínima a custodia mediana, por violación a las condiciones del mandato de liberación de la Junta de Libertad Bajo Palabra (Junta). El 14 de marzo de 2023, el señor Cruz Rodríguez solicitó reconsideración, la cual el Comité de Clasificación determinó no acoger el 29 de marzo de 2023, notificada el 18 de abril de 2023.

Con el beneficio de la comparecencia del Departamento de Corrección y Rehabilitación (DCR), representado por la Oficina del Procurador General, resolvemos.

Número Identificador
SEN2023_____

**I.**

El recurrente fue sentenciado el 14 de mayo de 1985, a cumplir cuatro (4) años de prisión por los delitos de robo y los Art. 6 y 7 de la Ley de Armas. El 21 de mayo de 1985 fue clasificado a custodia mediana. Luego de varios autos de prisión provisional y de reingresos al sistema penal, el 8 de septiembre de 1986, fue sentenciado a cumplir noventa y nueve (99) años por asesinato en primer grado y le fue revocado el privilegio de libertad bajo palabra. Posteriormente, fue sentenciado a cumplir quince (15) años por escalamiento agravado, cinco (5) años por daños agravados y seis (6) meses por el Art. 172 del Código Penal de 1974, posesión de herramientas para escalar. Luego de un extenso trámite procesal, el 25 de mayo de 2019, nuevamente le fue otorgado el privilegio de libertad bajo palabra.

Disfrutando del privilegio de libertad bajo palabra, el 31 de agosto de 2022, el señor Cruz Rodríguez irrumpió en la morada de su expareja, profiriéndole insultos y palabras soeces de manera verbal y por mensajes de texto. Como consecuencia, se expidió una *Orden de Protección*[1] en su contra y la Junta emitió una *Orden de Arresto* en su contra el 27 de septiembre de 2022, por lo que fue puesto bajo la custodia del DCR nuevamente.

Como parte de los procedimientos, la Junta celebró una Vista Sumaria Inicial en la cual determinó causa probable contra el señor Cruz Rodríguez.[2] Luego de varios trámites procesales, el 15 de diciembre de 2022, se celebró la *Vista Final de Revocación por Violación de Condiciones #9, #11 y #12 impuestas en el Mandato de Liberación*, en la cual la Junta revocó el privilegio de libertad bajo palabra al señor Cruz Rodríguez por haber sido amonestado en dos ocasiones al violar las condiciones del mandato y por su "conducta

---

[1] La orden de protección tiene el siguiente número: OPA-2022-027093.
[2] Véase, Apéndice del *Escrito en Cumplimiento de Resolución*, págs. 1-7.

sin los controles necesarios para funcionar en ambientes no estructurados". Además, el Comité de Clasificación aplicó la escala de recalificación de custodia en la que arrojó una puntuación de 4, ubicándolo en custodia mínima.[3] Sin embargo, el Comité de Clasificación acogió la modificación discrecional de "**Reingreso por violación de normas**", y reclasificó al señor Cruz Rodríguez en custodia mediana, por haber sido revocado el privilegio de libertad bajo palabra conforme establece el *Manual para la Clasificación de los Confinados*, Reglamento Núm. 9151, del 22 de enero de 2020, efectivo a partir del 20 de febrero de 2020.

El 13 de febrero de 2023, la Sociedad para la Asistencia Legal, en representación del señor Cruz Rodríguez, presentó una *Moción de Reconsideración de Revocación de Libertad Bajo Palabra*, en la cual expuso que la Junta debía reconsiderar su determinación de revocar el privilegio por entender que el querellado no cuenta con un hogar viable, y permitirle que coordinara una nueva visita a la vivienda propuesta por el Sr. Luis Ayala, amigo consejero del recurrente.

El 24 de febrero de 2022, el Comité de Clasificación emitió una *Resolución[4]*, en la cual determinó lo siguiente:

> Conforme al Plan de Reorganización **Núm. 2 del 21 de noviembre de 2011, "*Plan de Reorganización del Departamento de Corrección y Rehabilitación*"**, al amparo del Manual Para La Clasificación de Confinados #9151 del 22 de enero de 2020 y a la luz de lo anteriormente expuesto; el Comité de Clasificación y Tratamiento acordó: Reclasificar de custodia Mínima a custodia Mediana.

> Confinado salió en Libertad Bajo Palabra el 29 de mayo de 2019, el 27 de septiembre de 2022 [reingresó] con una orden de arresto de la Junta de Libertad Bajo Palabra y el 15 de diciembre de 2022 se celebró la Vista Final de revocación y le revocaron la Libertad Bajo Palabra por violación a las condiciones número 9,11 y 12 del Mandato de Libertad Bajo Palabra. Con la conducta observada mientras se encontraba disfrutando del privilegio de Libertad Bajo Palabra nos

---

[3] Véase, Apéndice de la *Revisión Administrativa*, pág. 10-13.
[4] *Id.*, págs. 7-9.

demuestra que no cuenta con los controles necesarios para funcionar en ambientes no estructurados. Deberá beneficiarse de los tratamientos que estén disponibles en el sistema penal para reforzar las conductas saludables que se observan en la comunidad. En una sociedad donde los niveles de tolerancia son frágiles es recomendable que se beneficie de tratamiento.

(Énfasis suplido).

Inconforme con la determinación de la Junta, el 14 de marzo de 2023, el señor Cruz Rodríguez, por derecho propio, presentó un formulario intitulado *Proceso de Reconsideración Sobre Recalificación de Custodia*, en el cual arguyó que estaba siendo sentenciado dos veces por el mismo delito, y que estaba siendo víctima de discrimen.[5] El 29 de marzo de 2023, notificada el 18 de abril de 2023, el Comité de Clasificación determinó no acoger la solicitud de reconsideración presentada por el señor Cruz Rodríguez, ratificando la determinación de la *Resolución* emitida el 24 de febrero de 2023.[6]

Aun en desacuerdo con la determinación de la Junta, el 25 de abril de 2023, recibido ante la Secretaría de este Tribunal de Apelaciones el 8 de mayo de 2023, el señor Cruz Rodríguez presentó un recurso de revisión administrativa.[7] De la comparecencia del señor Cruz Rodríguez no surgen con especificidad los señalamientos de error. Sin embargo, de una lectura de sus alegaciones, entendemos solicita que la clasificación que realizó el Comité de Clasificación le sea honrada y se le devuelva a la escala mínima en la institución carcelaria donde se encuentra actualmente cumpliendo su sentencia.

El 19 de mayo de 2023, emitimos *Resolución* a los efectos de conceder al DCR un término de diez (10) días para proporcionar un

---

[5] *Id.*, págs. 1-4.
[6] *Id.*, págs. 5-6.
[7] El recurso de Revisión Administrativa presentado por el señor Cruz Rodríguez tiene el ponche del Departamento de Corrección y Rehabilitación del 25 de abril de 2023. Se entiende que el recurso fue presentado en la fecha de entrega a la institución carcelaria. *Álamo Romero v. Adm. De Corrección*, 175 DPR 314, 323 (2009).

Formulario de Indigencia al señor Cruz Rodríguez y se entregara debidamente juramentado a este Tribunal de Apelaciones. En cumplimiento con lo anterior, el 31 de mayo de 2023, el recurrente presentó la *Solicitud y Declaración para que se Exima de Pago el Arancel por Razón de Indigencia* debidamente cumplimentado y juramentado el 23 de mayo de 2023.

El 5 de junio de 2023, concedimos un término al DCR para presentar su alegato en oposición. En cumplimiento de orden, el 30 de junio de 2023, la Oficina del Procurador General de Puerto Rico, en representación del DCR, presentó su *Escrito en Cumplimiento de Resolución.* Mediante su comparecencia, alega que el Manual de Clasificación provee cierta flexibilidad al Comité de Clasificación para adecuar caso a caso mediante modificaciones, algunas obligatorias y otras discrecionales. Además, aducen que el señor Cruz Rodríguez no presentó prueba alguna que rebatiera la presunción de corrección y legalidad a favor de la *Resolución* del Comité de Calificación.

## II.

### -A-

Es doctrina reiterada que las decisiones de los organismos administrativos merecen la mayor deferencia judicial.[8] Ello, en vista al gran conocimiento especializado y experiencia que las agencias ostentan.[9] Esta deferencia se debe a que son estos los que cuentan con el conocimiento experto y con la experiencia especializada de los asuntos que les son encomendados.[10]

---

[8] *Moreno Lorenzo y otros v. Depto. Fam.*, 207 DPR 833, 839 (2021); *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 126 (2019); *OSC v. CODEPOLA*, 202 DPR 842, 853 (2019).
[9] *OCS v. Universal*, 187 DPR 164, 178 (2012); *Pagán Santiago, et al. v. ASR*, 185 DPR 341, 358 (2012).
[10] *OEG v. Martínez Giraud*, 210 DPR 79 (2022); The *Sembler Co. v. Mun. de Carolina,* 185 DPR 800, 821 (2012); *Accumail P.R. v. Junta Sub. A.A.A.*, 170 DPR 821, 829 (2007); *Mun. San Juan v. Plaza Las Américas*, 169 DPR 310, 324 (2006); *Otero v. Toyota*, 163 DPR 716, 727 (2005); *Rebollo v. Yiyi Motors*, 161 DPR 69 (2004).

Así pues, la decisión de una agencia administrativa gozará de una presunción de legalidad y corrección que será respetada, siempre que la parte que la impugna no produzca evidencia suficiente para rebatirla.[11] El criterio rector para la revisión de este tipo de determinación es el de razonabilidad, esto es, si la actuación de la agencia fue ilegal, arbitraria, o tan irrazonable que constituye un abuso de discreción.[12]

A su vez, la revisión usualmente comprende las siguientes áreas: (1) si se concedió el remedio apropiado; (2) si las determinaciones de hechos son conformes al principio de evidencia sustancial que obre en el expediente administrativo; y (3) si las conclusiones de derecho son correctas.[13]

**B.**

La Sección 19 del Artículo VI de la Constitución del Estado Libre Asociado de Puerto Rico, LPRA, Tomo 1, dispone que será política pública del Estado reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva, y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social.[14]

Cónsono con ello, el Art. 10 del Plan de Reorganización Núm. 2-2011[15], estatuye que "[l]a población correccional será sometida a evaluaciones periódicas con el propósito de conocer y analizar su situación social, física, emocional y mental, historial delictivo e identificar sus capacidades, intereses, motivaciones, controles y limitaciones, a los fines de clasificarlos y determinar el plan de acción a tomar en cada caso, en armonía con los principios de

---

[11] *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 215 (2012).
[12] *Íd.*, pág. 216.
[13] *Moreno Lorenzo y otros v. Depto. Fam.*, supra, págs. 839-840; *Asoc. Fcias. v. Caribe Specialty, et al. II*, 179 DPR 923, 940 (2009).
[14] *López Borges v. Adm. Corrección*, 185 DPR 603, 619 (2012).
[15] Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011, 3 LPRA Ap. XVIII.

tratamiento individualizado y seguridad pública enmarcados en los propósitos de este Plan".[16]

A tales fines, el Departamento aprobó el *Manual para la Clasificación de los Confinados*, Reglamento Núm. 9151, del 22 de enero de 2020, efectivo a partir del 20 de febrero de 2020. El propósito de la reglamentación es establecer un sistema organizado para ingresar, procesar y asignar a los confinados a instituciones y programas del Departamento.[17]

Como parte de la política de la agencia, se encuentra la clasificación "de acuerdo con el nivel de custodia restrictiva más bajo que se requiera, la asignación de vivienda y la participación de los confinados en programas de trabajo y educación, adiestramiento vocacional y recreación que sean apropiados para ellos".[18] Precisamente, el Tribunal Supremo ha explicado que "la importancia de la reducción del nivel de custodia, como parte del proceso de rehabilitación, se refleja en la regla que enuncia constantemente el [Reglamento Núm. 9151][19]: se tiene que ubicar a cada confinado en el nivel de custodia menos restrictivo posible".[20]

De otro lado, el Artículo IV, Sección 1, del Reglamento Núm. 9151 establece que el Comité de Clasificación y Tratamiento es el responsable de evaluar las necesidades de seguridad y de los programas de los confinados sentenciados. El Comité tiene a su cargo la evaluación de los confinados, en lo concerniente a sus necesidades, aptitudes, intereses, limitaciones y funcionamiento social.[21] Sus objetivos primordiales son la rehabilitación, la asignación de custodia y la seguridad pública.[22]

---

[16] *Íd.*
[17] Art. II del Reglamento Núm. 9151.
[18] Art. III (1) del Reglamento Núm. 9151.
[19] A pesar de que la citada opinión cita el *Manual de Clasificación* de 2000, los principios invocados permanecieron inalterados en la versión del 2020. Perspectiva General (I) del Reglamento Núm. 9151.
[20] *López Borges v. Adm. Corrección*, supra, pág. 608.
[21] Art. IV, Sec. 2 (IV) del Reglamento Núm. 9151.
[22] Art. IV, Sec. 2 (IV)(A) del Reglamento Núm. 9151.

El sistema consta de una clasificación inicial del confinado, seguida de un proceso de reclasificación[23] periódica de cada reo. En lo atinente, una clasificación objetiva se refiere al "proceso confiable y válido mediante el cual se clasifica a los confinados y se les subdivide en grupos, basándose en varias consideraciones, entre las que se incluyen: la severidad del delito, su historial de delitos anteriores, su comportamiento en las instituciones, los requisitos de seguridad y supervisión y las necesidades identificables de programas y servicios específicos".[24] La reglamentación establece, además, que la reclasificación de confinados es el procedimiento para la revisión de la asignación del nivel actual de custodia de cada confinado, con el fin de determinar cuán apropiada es ésta.[25] Al exponer los objetivos perseguidos por dicho sistema, el Reglamento Núm. 9151 dispone el uso del formulario *Escala de Reclasificación de Custodia (Casos Sentenciados)*, reproducido en el Apéndice K, del cuerpo reglamentario, y aclara que:

> [...] La reevaluación de custodia no necesariamente tiene como resultado un cambio en la clasificación de custodia o la vivienda asignada. Su función primordial es verificar la adaptación del confinado y prestarle atención a cualquier situación que pueda surgir.
>
> La reevaluación de custodia se parece a la evaluación inicial de custodia, pero recalca aún más en la conducta institucional como reflejo del comportamiento real del confinado durante su reclusión. Es importante que los confinados que cumplan sentencias prolongadas tengan la oportunidad de obtener una reducción en niveles de custodia mediante el cumplimiento con los requisitos de la institución.[26]

La segunda sección de la *Escala de Reclasificación de Custodia,* denominada *Evaluación de Custodia,* detalla el proceso para revisar y actualizar la evaluación inicial del confinado. La

---

[23] El Reglamento Núm. 9151 define la reclasificación como la "[r]evisión periódica de los confinados en lo que respecta a su progreso como parte del Plan Institucional, así como también a su categoría de custodia". Art. IV, Sec. 1 del Reglamento Núm. 9151.
[24] Art. IV, Sec. 1 del Reglamento Núm. 9151.
[25] Art. IV, Sec. 7 (I) del Reglamento Núm. 9151.
[26] Art. IV, Sec. 7 (II) del Reglamento Núm. 9151.

sección contiene la escala de reclasificación de custodia para los casos de confinados sentenciados y enumera ocho criterios para realizar la correspondiente evaluación. Estos son: (1) la gravedad de los cargos y sentencias actuales; (2) el historial de delitos graves previos; (3) el historial de fuga o tentativas de fuga; (4) el número de acciones disciplinarias; (5) las acciones disciplinarias serias; (6) las sentencias anteriores por delitos graves como adultos; (7) la participación en programas; y, (8) la edad actual del miembro de la población correccional.[27]

Una vez completados los ocho renglones de la *Evaluación de Custodia* en la *Escala de Reclasificación de Custodia*, a base del resultado que se obtenga, se recomienda un nivel de custodia, que puede variar entre máxima, mediana o mínima. El nivel de custodia según la escala es el siguiente: 5 puntos o menos, corresponde a una custodia mínima; 5 puntos o menos si el confinado tiene una orden de arresto o detención, corresponde a una custodia mediana; 6 a 10 puntos, corresponde a una custodia mediana; 7 puntos o más en los renglones 1 al 3, corresponde a una custodia máxima; y, 11 puntos o más en los renglones 1 al 8, corresponde a una custodia máxima.[28]

Por otro lado, la *Escala de Reclasificación de Custodia* establece en la tercera sección unos criterios adicionales, tanto discrecionales como no discrecionales, que contemplan consideraciones especiales en el manejo de la asignación de niveles de custodia. Una modificación discrecional se refiere al "conjunto de factores específicos de clasificación que el personal puede usar para modificar la puntuación de clasificación de un confinado, pero solamente con la aprobación del supervisor de clasificación."[29]

---

[27] Apéndice K, Sec. II, del Reglamento Núm. 9151.
[28] Apéndice K, Sec. III, del Reglamento Núm. 9151.
[29] Art. IV, Sec. 1 del Reglamento Núm. 9151.

La reglamentación vigente establece unas modificaciones discrecionales para un nivel de custodia más alto. Estas son: (1) la gravedad del delito; (2) el historial de violencia excesiva; (3) la afiliación con gangas; (4) la dificultad en el manejo del confinado; (5) los grados de reincidencia; (6) el riesgo de fuga; (7) el comportamiento sexual agresivo; (8) los trastornos mentales o desajustes emocionales; (9) si representa una amenaza o peligro; (10) la desobediencia de las normas o rehusarse al plan de tratamiento; y, (11) el reingreso por violación de normas.[30]

No obstante, "toda modificación discrecional deberá estar basada en documentación escrita que evidencia ajustes adecuados y que se ha beneficiado de los programas de tratamientos requeridos, proveniente de informes disciplinarios, informes de querellas, informes de libros de novedades, documentos del expediente criminal o social, y cualquier otra información o documento que evidencia ajustes o comportamiento del confinado contrario a las normas y seguridad institucional".[31]

Por otra parte, el Reglamento Núm. 9151 incluye determinadas modificaciones no discrecionales. Aunque la reglamentación no define el término, de su cuerpo se desprende que estos factores inciden en la modificación de la clasificación de custodia y la persona que califica no tiene discreción en cuanto a su aplicación, sino que debe limitarse a anotar si el confinado cumple o no con los criterios consignados. Los factores son: (1) confinados con sentencias de 99 años o más; (2) orden de deportación; y, (3) más de 15 años antes de la fecha máxima de libertad bajo palabra.[32]

---

[30] Apéndice K, Sec. III (D) del Reglamento Núm. 9151.
[31] Apéndice K, Sec. III (D) del Reglamento Núm. 9151.
[32] Apéndice K, Sec. III (C) del Reglamento Núm. 9151.

**III.**

En síntesis, el recurrente solicita que revoquemos la determinación del Comité de Clasificación de mantenerlo en un nivel de custodia mediana, aun cuando su evaluación arrojó una puntuación de cuatro (4), que corresponde a un nivel de custodia mínima. Asimismo, alega que la determinación del Comité de Clasificación es incorrecta y ha retrasado su proceso de rehabilitación al ordenar su reingreso a la institución penal. Además, que es una decisión arbitraria y caprichosa que violenta el reglamento del DCR. No le asiste la razón. Veamos.

El Apéndice K, Sección III (D) del Reglamento Núm. 9151 establece las modificaciones discrecionales para un nivel de custodia mas alto, de la siguiente manera:

> Toda modificación discrecional debe estar basada en documentación escrita, proveniente de reportes disciplinarios, informes de querellas, informes de libros de novedades, documentos del expediente criminal o social y cualquier otra información o documento que evidencia ajustes o comportamiento del confinado contrario a las normas y seguridad institucional.
>
> [...]
>
> **Reingreso por violación de normas**: Incluye los confinados que, estando ubicados en centros de tratamiento públicos o privados en la comunidad, o en los Hogares de Adaptación Social y son devueltos a la institución por no cumplir o violar las normas del programa de tratamiento. Además, podrá considerarse al confinado que ingrese por violar las condiciones a la libertad a prueba o libertad bajo palabra.

En el balance de intereses que conlleva la determinación del cambio en la clasificación de custodia, el Comité de Clasificación tiene que sopesar criterios subjetivos y objetivos para asegurar la seguridad de la institución y la rehabilitación del confinado.

En la *Resolución* emitida por el Comité de Clasificación en el caso de epígrafe, estos especificaron que fundamentaron su determinación por este haber violado las condiciones #9, #11 y #12

del Mandato de Libertad Bajo Palabra. Enfatizaron que la conducta observada mientras el señor Cruz Rodríguez disfrutaba del privilegio de libertad bajo palabra demostró que no cuenta con los controles necesarios para funcionar en ambientes no estructurados. Asimismo, recomendaron que el señor Cruz Rodríguez debía beneficiarse de los tratamientos que estuviesen disponibles en el sistema penal para reforzar las conductas saludables que se observan en la comunidad.

Si bien en la Escala de Reclasificación de Custodia el recurrente obtuvo una puntuación que equivale al nivel de custodia mínima, dicha evaluación no es el único criterio que utiliza el Comité de Clasificación para analizar y recomendar el nivel de custodia apropiado para el confinado. En otras palabras, la agencia no está obligada a considerar, de manera aislada, el resultado de dicha evaluación y hacer abstracción de las demás circunstancias que rodean al confinado. Por ello, existen modificaciones discrecionales que llevaron al Comité de Clasificación a concluir que el señor Ortiz Rodríguez debía permanecer en custodia mediana.

El marco de revisión de este Tribunal se circunscribe a un estándar de razonabilidad. En ese contexto, concluimos que la determinación recurrida se fundamentó en el expediente administrativo y constituyó una actuación razonable de la agencia administrativa. En resumen, la determinación administrativa merece nuestra deferencia. Las determinaciones de hechos de organismos y agencias tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas. El señor Ortiz Rodríguez no demostró de manera fehaciente que el Comité de Clasificación actuó de manera irrazonable, caprichosa, ilegal o fuera del marco de los poderes delegados a ésta. Es por eso que, procede confirmar la determinación recurrida.

**IV.**

Por los fundamentos antes expuestos, confirmamos la *Resolución* recurrida.

Notifíquese.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones